615 P.2d 9

STATE of Arizona, Appellee,

v.

Rudolph CANISALES, Appellant.

No. 1 CA–CR 4104.

Court of Appeals of Arizona,
Division 1, Department A.

Jan. 24, 1980.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Division, Barbara Jarrett, Asst. Attys. Gen., Phoenix, for appellee.

Gregory R. Jordan, Phoenix, for appellant.

## OPINION

WREN, Judge.

Rudolph Canisales (appellant), Raymond Fred Garcia and Patricia Ojeda were charged by information with aggravated assault, a Class 3 felony. A.R.S. §§ 13–1203.A.1, 13–1204.A.2, 13–1204.B, 13–301, 13–302, 13–303, 13–304, 13–701, 13–702 and 13–801. Following a jury trial, defendant and Ojeda were found guilty of the lesser included offense of assault, a Class 1 misdemeanor. A.R.S. § 13–1203.A.1. Defendant Garcia was found not guilty. After entry of judgment of guilt of assault, the sentence of appellant was suspended and he was placed on one year probation. The conditions of probation included a requirement that he make restitution to the victim for medical expenses suffered and that he pay a certain amount to help defray the costs of his court-appointed counsel. Appellant now appeals, contending that certain remarks of the prosecuting attorney during closing argument so prejudice the jury against him that he was denied a fair trial. We disagree.

The charges against appellant arose from an incident which occurred near the State Fairgrounds in Phoenix on October 23, 1978. Appellant and some friends were driving by an area where the victim and others had been parking cars. Appellant, who was the driver of the vehicle, exited the car carrying a police-type nightstick and eventually began fighting with the victim. When the

victim grabbed the nightstick, friends of appellant came to his (appellant's) assistance. The victim was struck several times on the back of the head, legs and chest. He received five or six cuts on the back of his head and nine stitches were required to close one of the cuts. Neighbors of the victim succeeded in separating him from the defendants. When the police arrived, the defendants were arrested. An arresting officer testified at trial that they had been drinking. The defense theory was self-defense. At trial the prosecutor made the following statements during her closing argument:

> Ladies and gentlemen, what probably happened is, what these three guys were doing, is a couple of them had been drinking, they were out in their car on their way home, maybe driving around. What these—they're just punks, and they were looking for a fight.

Counsel for all three defendants immediately objected, and requested that the remark characterizing defendants as "punks" be stricken from the record. No motion for mistrial was made at that time.[1] The court sustained the objection, ordered that the term "punks" be stricken and instructed the jury to disregard it. In its final jury instructions, the trial court informed the jury, in relevant part:

> When testimony was ordered stricken from the Court's record, you are not to consider that testimony as evidence. Do not concern yourselves with the reasons for these decisions. Admission of evidence in Court is governed by rules of law.
>
> In the opening statements and closing arguments the lawyers have talked to you about the law and the evidence. What the lawyers said is not evidence, but it may help you to understand the law and the evidence.

Appellant does not challenge any other comment of the prosecuting attorney during her closing argument.

[1] The general criteria for determining whether remarks by the prosecution in a criminal case are so objectionable as to require a reversal of the case are whether the remarks called to the attention of the jury matters which they would not have been justified in considering in order to arrive at its verdict and whether the jury, under the circumstances of the case, was probably influenced by those remarks. *State v. Sustaita*, 119 Ariz. 583, 583 P.2d 239 (1978).

Not only do we find that the characterization of the defendants as "punks" was not so objectionable as to require reversal we hold that it was not an improper statement at all. "Punk" is defined in Webster's New Collegiate Dictionary (1974) as a "petty gangster, hoodlum or ruffian." Since it is a well-settled principle that counsel for both sides have considerable latitude in their arguments to the jury and since the use of the word "punk" constituted a fair comment on the state's theory of the case and the evidence which it had presented, we find no error in the use of the term.

If the jury believed the evidence presented by the state to be true the description applied to appellant was an allowable inference to be drawn from it. *Cf. State v. Trotter*, 110 Ariz. 61, 514 P.2d 1249 (1973); *State v. Jaramillo,* 110 Ariz. 481, 520 P.2d 1105 (1974); *State v. Scott,* 24 Ariz.App. 203, 537 P.2d 40 (1975); *State v. Marvin,* 124 Ariz. 555, 606 P.2d 406 (1980).

Courts of appeal will not usually review the exercise of a trial court's discretion in granting or denying a mistrial based on improper argument unless there is an invective so palpably improper that it is clearly injurious. *State v. Scott.*

Since we have held the argument here to be a fair comment, the judgment is affirmed.

FROEB, P. J., and DONOFRIO, J., concur.

---

1. Defense counsel moved for a mistrial during the next recess, and the motion was denied. We do not decide whether failure to make such a motion immediately constituted a waiver of a right to request a mistrial. *See State v. Ramirez,* 116 Ariz. 259, 569 P.2d 201 (1977).